UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAWN GRZEGORSKI,

    Plaintiff,

  v.                                                           Case No. 19-CV-1661

ANDREW M. SAUL,
**Commissioner of Social Security,**

    Defendant.

---

## DECISION AND ORDER

---

    Dawn Grzegorski seeks judicial review of the final decision of the Appeals Council of the Social Security Administration (Commissioner) denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). On March 20, 2019, an administrative law judge (ALJ) denied Grzegorski's claim at step five, concluding that Grzegorski "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy." R. 27. Grzegorski subsequently sought judicial review. For the reasons set forth below, the Commissioner's decision will be remanded for further proceedings consistent with this decision.

## BACKGROUND

    On November 16, 2016, Grzegorski applied for disability insurance benefits. The claim was denied initially and upon reconsideration. Thereafter, Grzegorski filed a written request for a hearing before an ALJ. R. 13. After receiving testimony both from Grzegorski and a vocational expert (VE) and reviewing the medical record, the ALJ concluded that Grzegorski suffered from the severe impairments of degenerative disc disease, bilateral carpal tunnel

syndrome release surgery, bilateral knee osteoarthritis, bipolar disorder, depressive disorder, and an anxiety disorder. R. 15. The ALJ concluded that none of Grzegorski's severe impairments met or medically equaled a listing. R. 16.

After determining her severe impairments, the ALJ assessed her residual functional capacity (RFC). The ALJ concluded that Grzegorski has the RFC to perform light work, except with no climbing ladders, ropes, and scaffolding; she retains the ability to occasionally climb ramps and stairs, stoop, kneel, crouch, or crawl; and she may handle or finger bilaterally no more than frequently. The ALJ also limited Grzegorski to understanding, remembering, and carrying out simple instructions; performing simple, routine, and repetitive tasks in a low-stress work environment, with no more than occasional interaction with supervisors or coworkers, and with no more than incidental interaction with the public. R. 18. Based on Grzegorski's RFC and the VE's subsequent testimony, the ALJ concluded that Grzegorski is unable to engage in any past work, but she could perform the occupations of electrical accessories assembler, industrial bagger, or hammer mill operator, all of which the ALJ determined are occupations that have significant numbers of positions available in the national economy. As a result, the ALJ concluded that Grzegorski is not disabled. R. 26-27.

## ANALYSIS

### I. Applicable Legal Standards

The Commissioner's final decision will be upheld "if the ALJ applied the correct legal standards and supported [her] decision with substantial evidence." *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011) (citing 42 U.S.C. § 405(g); *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010); *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009)). Substantial evidence is not conclusive evidence; it is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek*, 662 F.3d at 811 (citing *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009)). The ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (citing *Green v. Apfel*, 204 F.3d 780, 781 (7th Cir. 2000); *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998)).

The ALJ is also expected to follow the Social Security Administration's rulings and regulations. Failure to do so, unless the error is harmless, requires reversal. *See Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). In reviewing the entire record, the court "does not substitute its judgment for that of the Commissioner by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Finally, judicial review is limited to the rationales offered by the ALJ. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Johnson v. Apfel*, 189 F.3d 561, 564 (7th Cir. 1999); and *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)).

## II. Limitation to "occasional" interaction with coworkers lacked substantial evidence.

Grzegorski argues that the ALJ erred in assessing her residual functional capacity (RFC) because the ALJ determined that she is capable of occasional interaction with supervisors and coworkers, a conclusion rendered impossible by her anger outbursts and irritability. I agree that the ALJ failed to build a logical bridge from the evidence upon which he relied to his ultimate conclusion that Grzegorski remains capable of "occasional"

3

interaction with her coworkers, which the regulations define as interaction up to one-third of the day. *See* SSR 83-10.

At step four of the sequential process, the ALJ must determine the claimant's RFC, which "is the most you can still do despite your limitations," and the ALJ must base the determination "on all the relevant evidence in [the claimant's] case record." 20 C.F.R. § 404.1545. An RFC assessment must "include all of the limitations supported by medical evidence in the record." *Young v. Barnhart*, 362 F.3d 995, 1005 (7th Cir. 2004).

Grzegorski first argues that the ALJ ignored the body of evidence detailing her instantaneous and frequent bouts of irritability in light of the VE's testimony that more than one anger outburst is a work-preclusive condition. R. 67 ("[A]n employer may tolerate an anger outburst once and then it would be the end of the job."). However, the ALJ did not explain his conclusion that limiting Grzegorski's interaction with coworkers to only one-third of the workday will prevent Grzegorski from suffering more than one work-preclusive anger outburst. To the contrary, Grzegorski cites to evidence indicating that she becomes angry at strangers, which suggests that limiting the frequency of interaction would not impact the frequency of her anger outbursts. R. 1441 (affirming that Grzegorski is fearful of becoming angry at strangers); R. 1385 (recognizing that Grzegorski avoids public places for fear she may become angry and have an interaction).

The Commissioner relies on the opinions of the government agency mental health consultants; however, his reliance is misplaced for at least three reasons. First, of the three agency health consultants, only Ms. Palreddy recommended occasional interaction. However, a review of the document reveals that her recommendation of occasional interaction was intended for "public contact," not necessarily contact with coworkers, the

4

latter of whom Grzegorski must likely interact with on a daily basis. R. 143. Second, the other opinions fail to recommend occasional interaction, but instead merely corroborate Grzegorski's difficulties in dealing with other people. *See* R. 133 ("It is felt that the claimant would have some difficulties relating appropriately to supervisors and coworkers because she is withdrawn and irritable."); R. 152 (same); 813 (same). Third, regardless of the mental health consultants' opinions, the ALJ did not appear to rely upon their opinions with regard to interaction with coworkers. R. 23. The ALJ recites the opinions that Grzegorski can "relate[…] adequately with supervisors and co-workers" and "would have some difficulties relating appropriately to supervisors and coworkers because she is withdrawn and irritable," and thus concludes that "her reports of snapping at others better supports the limitation to no more than incidental interaction *with the public*." R. 23. However, there is no explanation for why the strict "incidental" limitation with respect to interacting with the public would not also apply to coworkers.

     The ALJ also seemed to make much of the fact that Grzegorski never lost a job due to her inability to get along with others. R. 23. Yet Grzegorski has not worked since 2004 and she alleged onset of her disability in January 2012, which was later amended to November 16, 2016. Indeed, Grzegorski testified that she sought out treatment for her irritability only starting in 2009, long after she had last held a job. R. 56. Therefore, although it may be true that she has not lost a job due to irritability, she has not *held* a job at all during the relevant period. As such, no material inference may be drawn from that fact. In sum, I conclude that the ALJ failed to build logical bridge between the evidence and the conclusion that Grzegorski remains capable of occasional interaction with coworkers.

5

Case 2:19-cv-01661-SCD    Filed 08/26/20    Page 5 of 15    Document 22

### III. Severity of Symptoms

Grzegorski also argues that the ALJ erred in determining that the severity of her symptoms is not entirely consistent with the evidentiary record. Under Social Security regulations, when evaluating a claimant's subjective symptoms, the ALJ must follow a two-step process. 20 C.F.R. § 416,927; SSR 16-03p. The ALJ must first "determine whether the individual has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-03p. Then, assuming that the ALJ finds in the affirmative at step one, the ALJ must "evaluate the intensity and persistence of an individual's symptoms such as pain and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities for an adult." *Id*.

Grzegorski claims she suffers from disabling mental impairments, notably frequent irritability. In discounting the impact of her irritability, the ALJ first relies on Grzegorski's appearance at the majority of appointments in which she exhibited appropriate demeanor and normal behavior and mood. However, Grzegorski suffers from bipolar disorder and "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms," *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011), and "so a snapshot of any single moment says little about her overall condition," *Punzio v. Astrue*, 630F.3d 704, 710 (7th Cir. 2011). Here, the ALJ merely relies upon treatment notes illustrating temporary, instantaneous observations while ignoring comments in those very same treatment notes that demonstrate irritability. For instance, the ALJ notes that Grzegorski's irritability did not manifest itself during Dr. Spiro's August 11, 2016 examination; however, in that same treatment note, Dr. Spiro recognizes that: "[Grzegorski] has been snapping easily she says." R. 563. Further, many of treatment notes on which the ALJ relies to illustrate that Grzegorski appeared with

6

appropriate mood and demeanor offer nothing in terms of an overall opinion with respect to her irritability.

The ALJ also relies in part on the fact that Grzegorski has not required inpatient hospitalization as a basis to discredit the severity of her symptoms. However, "a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling." *Adams v. Berryhill*, 2017 WL 4349718, *12 (N.D. Ind. Oct. 2, 2017). Indeed, "[t]he institutionalization of the mentally ill is generally reserved for persons who are suicidal, otherwise violent, demented, or (for whatever reason) incapable of taking even elementary care of themselves." *Voigt v. Colvin*, 781 F.3d 871, 876 (7th Cir. 2015). As a result, "there is no requirement in social security law that a claimant require hospitalization in order to demonstrate a severe mental impairment." *Worzalla v. Barnhart,* 311 F. Supp. 2d 782, 796 (E.D. Wis. 2004) (citing *Wallace v. Barnhart,* 256 F.Supp.2d 1360, 1371 (S.D.Fla.2003)). Here, the ALJ referenced the lack of "inpatient hospitalizations without explaining why those forms of treatment would be necessary for [Grzegorski's] impairments." *Frobes v. Barnhart*, 467 F. Supp. 2d 808, 819 (N.D. Ill. 2006). This is perhaps particularly salient with respect to mental disorders that cause irritability and behavioral issues around other people—the kinds of symptoms that would not require hospitalization in almost any instance.

I therefore conclude that the reasons the ALJ offers to determine that Grzegorski's mental symptoms, especially her allegation of frequent irritability, are not supported by substantial evidence.

**IV.  ALJ improperly weighed Grzegorski's treating physicians and medical treatment sources.**

The ALJ is required to give "controlling weight" to treating medical providers if their opinions are "well-supported by medically acceptable clinical and laboratory diagnostic

7

techniques and [are] not inconsistent with the other substantial evidence in your case record." 20 C.F.R. § 404.1527(d)(2); *Meuser v. Colvin*, 838 F.3d 905, 912 (7th Cir. 2016). However, if an ALJ refuses to give controlling weight to the opinions of the treating medical providers, the ALJ is required to provide "good reasons." 20 C.F.R. § 404.1527(d)(2). Accordingly, the ALJ cannot "'simply discard [the opinions].'" *Meuser*, 838 F.3d at 912 (quoting *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014)).

Further, even if the ALJ declines to extend controlling weight, "the ALJ [is] required to explicitly consider the details of the treatment relationship and explain the weight he [is] giving the opinion." *Id.* The ALJ must "consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion" in determining the appropriate degree of weight to afford to the opinions. *Moss*, 555 F.3d at 561.

### A. The ALJ provided "good reasons" for failing to confer controlling weight upon Dr. Reid's assessments.

Dr. Reid, a treating provider, opined that Grzegorski's impairments would cause her to remain off-task more than thirty percent of the workday and work at less than fifty percent the pace of an average worker, would render her unable to perform more than simple 1-2 step work processes, would require unscheduled work breaks about ten times during an average workday, and would cause her to exhibit impairment-related absenteeism more than four days per month. R. 1069-1071. If accepted, these limitations would preclude work.

The ALJ gave several reasons for giving "little weight" to Dr. Reid's opinion. R. 24. First, the ALJ gave little weight to Dr. Reid's opinion that Grzegorski would remain off-task thirty percent of the time and work at less than fifty percent the pace of an average worker because, according to the ALJ, observations detailing Grzegorski's fair to good attention,

8

energy, and/or concentration at the majority of her evaluations contradicts this opinion. Second, the ALJ gave little weight to Dr. Reid's opinion that she cannot ambulate because, according to the ALJ, her normal and steady gait at multiple examinations contradict this opinion. Third, the ALJ gave little weight to Dr. Reid's opinion that she needs ten unscheduled breaks because this opinion is not explained and is contrary to her fair and normal concentration and attention and improved functioning with treatment. Fourth, the ALJ questioned the notion that she cannot lift even ten pounds because Grzegorski's 5/5 result on her strength examinations "beguile" this opinion. Lastly, the ALJ gave little weight to Dr. Reid's opinion regarding her ability for handling and fingering because examinations indicate good or mild grip strength and sensation in her hands. R. 24.

In response, Grzegorski argues that the ALJ relies upon the "same reasons [the ALJ] relies on to reject Grzegorski's statements and, for the same reasons as argued supra, [the ALJ's] reasoning is unsupported." ECF No. 14 at 19. However, the preceding arguments in Grzegorski's brief fail to touch upon many of the rationale supplied by the ALJ. Accordingly, much of her argument is undeveloped. Grzegorski does address the ALJ's reliance on her activities of daily living, disproportionate pain, mild diagnostic imaging, and scope of expertise. However, the ALJ's reliance on mild diagnostic imaging and activities of daily living qualify as sound reasons.

With respect to the ALJ's reliance upon Grzegorski's activities of daily living, Grzegorski argues that the ALJ improperly ignored her limitations, including her need to take constant breaks and rely upon the help of her boyfriend. Nonetheless, the ALJ need not consider Grzegorski's limitations because the ALJ relied upon her activities of daily living merely to discount Dr. Reid's opinion regarding her handling and fingering, an inference that

9

does not change regardless of Grzegorski's need to take constant breaks or rely upon her boyfriend's help. Further, the ALJ also relied upon Grzegorski's statement that she occasionally does small color and craft projects, an admission that appears to directly contrast Dr. Reid's opinion that she is unable to handle or finger with her hands. Likewise, with respect to the ALJ's reliance on mild diagnostic imaging, his reliance is appropriate because, unlike the ALJ's previous and impermissible inference equating mild diagnostic imaging results to mild pain, here, the ALJ relied upon mild diagnostic imaging results as a basis for contradicting Dr. Reid's opinions regarding Grzegorski's ability to sit, stand, or need alternate positional restrictions. Such an inference was permissible.

Dr. Reid also opined without explanation that, as a result of "bad days" or the need for medical treatment, Grzegorski would incur more than four days of absenteeism per month. However, neither Dr. Reid nor Grzegorski present any evidence demonstrating that Grzegorski will likely experience more than four "bad days" per month or that her medical treatments will require her absence from work for more than four days per month. *See e.g. Best v. Berryhill*, 730 F. App'x 380, 382 (7th Cir. 2018) (affirming the ALJ's decision refusing to extend controlling weight to the claimant's claim of absences because, in part, the claimant failed to show how his doctors' appointments would preclude him from working).

In sum, I cannot say that the ALJ failed to provide "good reasons" for his decision to afford Dr. Reid's opinions little weight.

> **B.** **The ALJ improperly assigned "little weight" to the opinions of the treating nurse practitioner and treating social worker.**

The plaintiff began seeing nurse practitioner Mary Kay Bultman in 2017. R. 1274. On a disability form, Bultman indicated that Grzegorski suffered fatigue, depressed mood, disturbed sleep, and experienced verbal outbursts of anger at least several times per week.

R. 1080. Bultman further opined that Grzegorski was prone to being distracted by coworkers and responding inappropriately to instruction from supervisors because she "has a bad temper." R. 1081. Bultman opined that the plaintiff would miss four or more days of work per month and would need two to three unscheduled breaks per day due to anxiety. *Id.* She would be off task more than thirty percent of a workday, would work at about fifty-percent efficiency, and would require extra supervision several times per day. R. 1082. Bultman also checked boxes implying that Grzegorski would have marked limitations in dozens of areas, including understanding instructions, using reason and judgment, solving problems, performing tasks, working at an acceptable pace, and sustaining regular work attendance. R. 1083. Finally, Bultman indicated that her patient's mental disorder had been "serious and persistent" throughout at least the last two years; she also wrote that "the patient has a high level of anxiety." R. 1084.

The plaintiff also saw social worker Holly Neuman, an advanced practice social worker, for psychotherapy. Neuman also filled out a disability form, indicating that Grzegorski suffers from bipolar and anxiety disorders, experiences verbal outbursts of anger several times per week, and had difficulty responding to instruction or criticism. R. 1074-75. She opined that Grzegorski would miss more than four days of work per month. R. 1075. For several questions, she indicated "unable to assess" and left the answer blocks blank.

Bultman is an advanced practice nurse practitioner (APNP), and Neuman is an advanced practice social worker (APSW); neither qualifies as an acceptable medical source, meaning that their opinions are not entitled to controlling weight. *See Turner v. Astrue*, 390 F. App'x 581, 586 (7th Cir. 2010) (affirming that "[a] nurse-practitioner . . . is not a 'treating source'"); *see* SSR 06-03P (listing "nurse practitioners" as an "other source" that is not an

11

Case 2:19-cv-01661-SCD   Filed 08/26/20   Page 11 of 15   Document 22

"acceptable medical source"). Although the ALJ need not afford their opinions "controlling weight," the ALJ must consider the opinions and properly determine the requisite weight to afford them. Their opinions "are important and should be evaluated on key issues such as impairment severity and functional effects." *Hunt v. Astrue*, 889 F. Supp. 2d 1129, 1143 (E.D. Wis. 2012); *see also Lauer v. Apfel*, 169 F.3d 489, 494 (7th Cir. 1999) (affirming that "reports from non-physicians are helpful when determining functional capacity"). Indeed, their opinions may demonstrate "the severity of the individual's impairment(s) and how it affects the individual's ability to function." *Joseph H. v. Saul*, No. 17 C 50353, 2019 WL 5963631, at *10 (N.D. Ill. Nov. 12, 2019).

In determining the degree of weight to afford to these opinions, an ALJ should consider the six factors listed in the regulation, which include the examining relationship, treatment relationship, length of the treatment relationship and the frequency of examination, supportability, consistency, and specialization. *See generally* 20 C.F.R. § 404.1527(c). Here, the ALJ supported his decision to afford their opinions little weight without addressing most of the enumerated six factors. Notably, the ALJ failed to consider the examining relationship, treatment relationship, length of the treatment relationship and the frequency of examination, specialization, and other factors. Instead, the ALJ appeared to consider only the supportability and consistency of their opinions.

Nonetheless, the reasons the ALJ cited for rejecting their opinions are not persuasive. First, the ALJ notes that their opinions are given by way of a check-box form. "Although by itself a check-box form might be weak evidence, the form takes on greater significance when . . . . a long record of treatment [notes]" by the treating medical source supports the check-box form. *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010). Here, the treatment notes

demonstrate a long record of supporting documentation, even if much of the support comes from Bultman's or Neuman's observations or recitations of Grzegorski's complaints. *See* R. 1301 (reciting that "[t]he patient states that she is still very depressed"); R. 1367 (reciting that Grzegorski "gets agitated very easily and snaps at people); R. 1403 (recognizing that her mood as anxious and the affect as agitation); R. 1427 (recognizing that "the patient . . . is still getting very irritated and angry with her partner and other people she cares about"); R. 1451 (reciting that "[t]he patient states that she is still getting angry, and this is affecting her relationships both with her partner and her brothers and other friends"). Moreover, the form filled out by Bultman contains narrative statements indicating that Grzegorski is "prone to depression," "has a bad temper," and "is very anxious." R. 1080-1083. Thus, the check-box form is a summary encapsulation of a treating relationship and cannot be written off merely because it allows the provider to check boxes.

Second, the ALJ discounts their opinions because they are inconsistent with the overall evidentiary record, specifically Grzegorski's concession that she never lost a job due to an inability to get along with others and reports of her normal behavior and normal mental acuity. As explained above, Grzegorski has not worked since 2004 and she alleged onset of her disability in January 2012, which was later amended to November 16, 2016. Accordingly, the ALJ's observation that she never lost a job due to an inability to get along with others should play no role in the evaluation of Bultman's or Neuman's opinions. As for the latter reason, as noted above, Grzegorski suffers from bipolar disorder and "[t]he very nature of bipolar disorder is that people with the disease experience fluctuations in their symptoms," *Scott*, 647 F.3d at 740. Here, the ALJ merely relies upon treatment notes illustrating temporary, instantaneous observations while ignoring comments in those very same

13

treatment notes that demonstrate irritability. Moreover, any inference from the fact that she is sometimes able to appear with "normal behavior, normal mood, appropriate demeanor," etc., R. 25, during her medical appointments is limited, given that mental health patients are often much more comfortable with familiar treatment providers than they would be in a work setting.

The ALJ also based his decision to afford little weight to Neuman's opinion on Grzegorski's activities of daily living and her ability to maintain close relationships. However, as noted above, the ALJ either ignores or misconstrues pertinent evidence. "An ALJ cannot disregard a claimant's limitations in performing household activities," *Moss*, 555 F.3d at 562, yet, here, Grzegorski has stated that she cannot perform her household chores in one day, must take lots of rests, requires the help of her boyfriend to complete many of these tasks and that she sometimes is unable to get out of her bed because of depression. R. 316. Likewise, the ALJ ignores the difficulty to which Grzegorski has admitted in maintaining her close relationships.

With respect to Bultman's opinions, the ALJ cited the lack of any in-patient hospitalization. As explained above, "a lack of hospitalization does not necessarily mean that the individual's symptoms are not disabling." *Adams*, 2017 WL 4349718, *12; *see also Frobes*, 467 F. Supp. 2d at 819 (criticizing the ALJ's reference of the lack of "inpatient hospitalizations without explaining why those forms of treatment would be necessary"). Thus, no inference may be drawn from the absence of hospitalization.

In sum, the reasons upon which the ALJ based his decision to afford little weight largely ignore or misconstrue pertinent evidence and, consequently, I conclude the ALJ failed to build a logical bridge connecting the evidence to his eventual conclusion. Further, the ALJ

14

Case 2:19-cv-01661-SCD   Filed 08/26/20   Page 14 of 15   Document 22

failed to consider the examining relationship, treatment relationship, length of the treatment relationship and the frequency of examination, supportability, consistency, specialization, and other factors, as 20 C.F.R. § 404.1527(c) requires.

Although the Commissioner urges that any error is harmless, I must disagree. An error is harmless only when a court can "predict with great confident that the result on remand would be the same." *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). Here, both Bultman and Neuman opine that Grzegorski would exhibit verbal outbursts several times a week or more and would have difficulty with her bad temper, among other opinions. R. 1080; R. 1074-1078. If the ALJ were to apply the enumerated factors and properly construe and consider the pertinent evidence, I cannot say with certainty what result the ALJ would reach. Therefore, remand is required.

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** pursuant to sentence four of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), for further proceedings consistent with this decision. The Clerk of Court shall enter judgment accordingly.

**SO ORDERED** this 26th of August, 2020.

STEPHEN C. DRIES
United States Magistrate Judge